IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 5, 2021, at Jackson

## STATE OF TENNESSEE v. LORENZO ONEAL BARNHILL

**Appeal from the Criminal Court for Davidson County**
**Nos. 2019-A-106, 2019-A-334     Angelita Blackshear Dalton, Judge**
_____

### No. M2021-00089-CCA-R3-CD
_____

Defendant, Lorenzo Barnhill, claims the trial court erred by finding that he was a dangerous offender and ordering his four-year sentence in Case No. 2019-A-106 to be served consecutively to his effective seven-year sentence in Case No. 2019-A-334. After a review of the record and applicable law, we determine that the trial court provided reasons on the record establishing by a preponderance of the evidence that Defendant was an offender whose "record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2). Because the trial court found one of the seven criteria listed in Tennessee Code Annotated section 40-35-115(b), the trial court did not abuse its discretion in aligning the sentences consecutively. We affirm the judgments of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jay A. Umerley (on appeal) and Nicholas McGregor (at sentencing), Nashville, Tennessee, for the appellant, Lorenzo Oneal Barnhill.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jeffrey Jackson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual and Procedural Background

On February 8, 2019, the Davidson County Grand Jury indicted Defendant in Case No. 2019-A-106 for knowingly possessing a firearm after being convicted of a felony crime of violence ("felon in possession of a weapon") (Count 1), evading arrest (Count 2), and resisting arrest (Count 3). On March 1, 2019, the Grand Jury indicted Defendant in Case No. 2019-A-334 for five counts of aggravated robbery (Counts 1 - 5) and one count of felon in possession of a weapon (Count 6).

On November 24, 2020, Defendant filed a Petition to Enter Plea of Guilty (the plea agreement) as a Range II multiple offender to two counts of attempted aggravated robbery and two counts of felon in possession of a weapon. The agreement called for Defendant to be sentenced to concurrent terms of seven years for attempted aggravated robbery in Count 1 and Count 2 of Case No. 2019-A-334, three years for felon in possession of a weapon in Count 6 of Case No. 2019-A-334, and four years for felon in possession of a weapon in Count 1 of Case No. 2019-A-106 with the trial court to determine the manner of service and alignment of the felon in possession sentences. The remaining counts were dismissed.

At the plea submission hearing, the State presented the following factual basis:

[I]n case number 2019-A-334 and also [in case number 2019-]A-106 had this matter gone to trial[,] the State's proof would have shown that on October 26, 2018 at approximately 10:24 p.m. Officer Marvis Malone was dispatched to 5768 Old Hickory Boulevard in reference to a robbery. Officer Jacob West was dispatched at 10:56 p.m. Upon arrival Officer Malone spoke with the victims identified as Waite Martinez Mendez, Ever Vasquez Mendez, Erick Martinez, Elvin Martinez Mendez, and Erlin Vasquez Mendez. The victims were staying in room 122 of the America Best Value Inn.

Erick and Elvin stated that they were followed to their room by two suspects and pushed inside. The black male suspect then pulled out a silver handgun and pointed it at all of the victims. The suspects then started to go through all of the victims' belongings in the room. Ever Mendez stated the suspect with the handgun took his gold necklace, bracelet, and his watch.

Further investigation revealed through surveillance video that [Defendant] was a suspect in this matter. He resided at the hotel. A warrant was taken out for his arrest for the aggravated robbery of the five individuals. Upon contact of [Defendant], [Defendant] fled from officers on a short foot

chase.  Upon arrest of [Defendant,] a silver handgun fell out of [Defendant's] left pocket.  [Defendant] was a convicted felon at this point.  All of these facts occurred here in Davidson County[.]

When questioned by the trial court, Defendant acknowledged that he was able to hear what [the State] just said about [his] cases" and that it was "basically true."

### *Sentencing Hearing*

At the January 14, 2021 sentencing hearing, the State introduced the presentence report as Exhibit 1 and three certified judgments of Defendant's prior felony convictions in Davidson County as collective Exhibit 2.

Ronald Jones, Defendant's brother, testified via Zoom that Defendant was adopted by his parents.  He stated that he would help Defendant find employment if Defendant was granted probation.

Angel Raines, Defendant's biological mother, also testified via Zoom.  She said that Valerie Jones, the woman who adopted Defendant, only wanted him because she would get a "government check."  Ms. Raines said that Ms. Jones was "lowdown" and never loved Defendant "like she did."  Ms. Raines remained close to Defendant and "did all the work."  She said that Defendant began misbehaving when he was ten years old and went to live with his brother Terrance Jones in Virginia during high school.  Ms. Raines said that she knew Defendant was arrested in 2007 for aggravated robbery and was incarcerated.  She also knew Defendant was arrested in 2012 for aggravated assault and was sentenced to six years' probation.

Ms. Raines said that Defendant could live with her if released from custody.  She said that she was in bad health and had thyroid cancer and breast cancer.  She claimed that Defendant had changed since he was incarcerated on the charges in this case.  On cross-examination, she agreed that Defendant was living with her when his six years' probation for aggravated assault was revoked.

Defendant testified that he was thirty-four years of age and that he graduated from high school.  After high school he began working at Burger King.  He also worked in construction for several companies building condominiums in Nashville.  He said that he began smoking marijuana at seventeen and started using cocaine at nineteen.

Defendant was arrested in 2006 for aggravated robbery and pled guilty on June 8, 2007.  He was sentenced to eight years' incarceration and was paroled in 2010.  He said that he used a BB gun to take the victim's billfold in the 2007 aggravated robbery.  He was

arrested in 2012 for two counts of aggravated assault because he "had an altercation" with a woman that he was trying "to get out of [his] room." He said that she did not want to get out, so he "tried to just throw her out." He pled guilty on December 17, 2013, to one count of aggravated assault with a deadly weapon and one count of aggravated assault by strangulation. On cross-examination, Defendant admitted that he held "a small Swiss Army Knife to the victim's throat."

Defendant said that the charges in this case occurred while he was living at a motel in Nashville where he met Charles McFarland, who was charged as a codefendant in Case No. 2019-A-334. He stated that he and Mr. McFarland did not plan the robbery. He said that he "was talking to one of the victims by myself alone and I guess [Mr. McFarland] thought that one of the guys wanted to engage with him on something or he was trying to sell something to one of the victims or whatever, he thought somebody wanted to buy something." Defendant admitted the "something" was drugs. Defendant said that the victim invited him into a room with some other people and then Mr. McFarland came in. Defendant admitted that he had a pistol in his possession when he entered the room. He said that he "brandished [his] weapon" and initiated the robbery. He admitted that he did not see Mr. McFarland with a weapon or hear him ask the victims for anything.

Defendant was unable to make bail in this case. He said that, during his incarceration, he earned two Men of Valor Certificates and completed several programs offered at the jail, including Go Further Reentry, Jericho Project, and the Victim Impact Program—You have the Power. Defendant introduced, as Exhibit 3, a letter from M. Ellison, the Program Facilitator for Reentry CoreCivic, stating that Defendant "successfully completed CoreCivic's intensive, 19 week, Go Further reentry program" and that he "had outstanding attendance and was actively involved with each and every discussion." Defendant stated that he "had been clean since he was incarcerated and [that he had] rehabilitated [him]self."

### *Trial Court's Oral Findings and Pronouncement of Sentence*

At the conclusion of the sentencing hearing, the trial court issued its oral findings. The court stated that it had considered the testimony offered at the sentencing hearing, the health of Defendant's mother, and the victim impact statements. Concerning the manner of service of the sentences, the court found that all three of the considerations listed in Tennessee Code Annotated sections 40-35-103(1) supported a sentence of confinement. The court noted that Defendant was convicted of aggravated robbery in 2007 and two aggravated assaults arising out of a single incident in 2013, one with a weapon and the other by strangulation. The court found, "based upon the record and the nature of those prior convictions that section 40-35-103(1)(A) does apply." In explaining its reasons to apply section 40-35-103(1)(B), the court found that Defendant's "conduct left [the victims]

- 4 -

feeling that this [wa]s very serious" and that Defendant acknowledged the seriousness of his conduct. The court noted that, not only did Defendant "possess a weapon to commit these robberies, he possessed a weapon at a time when he was not even supposed to possess a weapon." The court characterized this as a "very dangerous mix." The court found that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to Defendant. The court noted that Defendant was on parole when he committed the aggravated assaults, that he was on probation for aggravated assault when he committed the offenses in this case, and "that section 43-35-103(1)(C) definitely applies."

Turning to the alignment of the sentences for felon in possession of a weapon, the court found that Defendant's "record of criminal activity is extensive, especially when you look at the two separate incidents, prior incidents of the aggravated robbery and the aggravated assaults[.]" The court found that the violent nature of Defendant's criminal conduct had progressed from "using a BB gun to rob someone of their wallet," to "assaulting a young woman by putting a knife to her throat and strangling her," to attempting to rob multiple victims with a pistol that was illegal for Defendant to possess. Based on "the serious nature" of the prior incidents of aggravated robbery and aggravated assaults, the court found that Defendant was "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high." The trial court ordered the four-year sentence for felon in possession of a firearm in Case No. 2019-A-106 to be served consecutively to the effective seven-year sentence for the attempted aggravated robberies and ordered the three-year sentence for felon in possession of a firearm in Case No. 2019-A-334 to be served concurrently with all sentences, for a total effective sentence of eleven years' incarceration.

Defendant timely filed a notice of appeal.

**Analysis**

On appeal, Defendant claims that the trial court erred in finding that he was a dangerous offender and by imposing partially consecutive sentences. Defendant does not address the trial court's finding that Defendant was an offender whose "record of criminal activity is extensive." The State maintains that the trial court made the appropriate findings to support consecutive sentencing.

***Standard of Review***

When the trial court provides reasons on the record establishing by a preponderance of the evidence that at least one of the seven criteria listed in Tennessee Code Annotated section 40-35-115(b) applies, the trial court's consecutive alignment of sentences "will be

presumed reasonable and, absent an abuse of discretion, upheld on appeal." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). As pertinent to the findings of the trial court, Tennessee Code Annotated section 40-35-115 provides:

> (a) If a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section.
>
> (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
>
> . . .
>
> (2) [t]he defendant is an offender whose record of criminal activity is extensive; [or]
>
> . . .
>
> (4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]

Tenn. Code Ann. § 40-35-115 (2020).

### *Dangerous Offender*

The trial court found that Defendant was "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. § 40-35-115(b)(4) (2020). Defendant argues on appeal that "the crimes in this case only involve attempted aggravated robbery, not [the] actual use or discharge of the weapon to commit a dangerous act" and that "[t]his limited evidence shows that [Defendant] is not dangerous and did not disregard human life."[1] Although Defendant claims on appeal that the trial court erred in finding him to be a dangerous offender, Defendant neither cited *Wilkerson* nor claimed that the

---

[1] The entire "Argument" section of Defendant's brief consists of a single paragraph containing four sentences and no citation to authority. The brief does not substantially conform to the requirements of Tennessee Rule of Appellate Procedure 27(a)(7)(A) or Tennessee Court of Criminal Appeals Rule 10. Despite our conclusion that the brief is inadequate, we chose to conduct a review of the issue. *See Teddy Ogle v. State*, No. E2018-01520-CCA-R3-PC, 2019 WL 2355033, at *3 (Tenn. Crim. App. June 4, 2019), *perm. app. denied* (Tenn. Sept. 18, 2019).

trial court erred by failing to make the *Wilkerson* findings. *See State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). As our supreme court stated in *Wilkerson*:

> Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences. Every offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences; consequently, the provisions of Section 40-35-115 cannot be read in isolation from the other provisions of the Act. *The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender.*

*Id.* at 938 (emphasis added); *see also State v. Guadalupe Arroyo, Alias*, No. E2003-02355-CCA-R3-CD, 2004 WL 1924033, at *3 (Tenn. Crim. App. Aug. 30, 2004).

We determine that the trial court properly found Defendant to be a dangerous offender but failed to find that an extended sentence is necessary to protect the public from further criminal conduct by Defendant and that consecutive sentencing is reasonably related to the severity of the offenses and, therefore, erred in imposing consecutive sentencing based on Tennessee Code Annotated section 40-35-115(b)(4).

### *Defendant's Record of Criminal Activity*

The court also found that Defendant is an offender whose "record of criminal activity is extensive, especially when you look at the two separate incidents, prior incidents of the aggravated robbery and the aggravated assaults[.]" In determining whether Defendant's record of criminal activity is extensive, the court may consider "not only the convictions before the sentencing court but also prior offenses." *State v. Palmer*, 10 S.W.3d 638, 647-49 (Tenn. Crim. App. 1999). In determining the extensiveness of Defendant's criminal history, the court properly considered both aggravated assault convictions even though they arose out of a single incident. *Id.* Additionally, "an extensive record of criminal activity may include criminal behavior which does not result in a conviction." *State v. Koffman*, 207 S.W.3d 309, 324 (Tenn. Crim. App. 2006). The presentence report shows that Defendant had one prior conviction for aggravated robbery, two prior convictions for aggravated assault, one conviction for Class A misdemeanor contributing to the delinquency of a minor, one conviction for driving while license was suspended, and a long history of illegal usage of marijuana and cocaine.

We determine that the trial court provided reasons on the record establishing by a preponderance of the evidence that Defendant was an offender whose "record of criminal

activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2) (2020).  Because the trial court found one of the seven criteria listed in Tennessee Code Annotated section 40-35-115(b), the trial court's consecutive alignment of sentences is presumed reasonable.  We find no abuse of discretion in the trial court's decision to order the four-year sentence for felon in possession of a weapon in Case No. 2019-A-106 to be served consecutively to the effective seven-year sentence in Case No. 2019-A-334.  *Pollard*, 432 S.W.3d at 861.

## Conclusion

The judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE